IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAGNER ZIP-CHANGE, INC., an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> TUBELITEDENCO, LLC, a Delaware limited liability company; TUBELITE DEN HOLDINGS, LLC, a Delaware limited liability company; and TUBELITE DEN, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 23-cv-5077 <br><br> JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff Wagner Zip-Change, Inc., by and through its undersigned attorneys FisherBroyles LLP, for its Complaint against defendants Tubelitedenco, LLC, Tubelite Den Holdings, LLC, and Tubelite Den, LLC, alleges as follows:

## PARTIES

1. Plaintiff Wagner Zip-Change, Inc. ("Wagner" or "Plaintiff") is an Illinois corporation with its principal place of business in Melrose Park, Illinois. Prior to late 2021, Wagner was in the business of selling sign products such as trim cap, marquee sign lettering, tracking, mounting systems, three-dimensional injection molded plastic lettering systems, and related tools and accessories to distributors, which in turn sold to end use sign companies and other customers.

2. Defendants Tubelitedenco, LLC, Tubelite Den Holdings, LLC, and Tubelite Den, LLC ("Tubelite") are Delaware limited liability companies in the business of distributing sign products throughout the United States, including in Cook County, Illinois.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 in that Plaintiff's claims arise under the Lanham Act, 15 U.S.C. §§ 1114, 1117 and 1125(a). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Defendants are subject to personal jurisdiction in this district on the basis that they are doing business in the State of Illinois by, among other things, distributing and selling products and services throughout the United States, including within and into Illinois.

5. Defendants are also subject to personal jurisdiction in this district in that, among other things, they have transacted business in Illinois, engaged in tortious acts in Illinois, engaged in conduct directed at Illinois, and have sufficient minimum contacts with Illinois such that subjecting them to jurisdiction here is consistent with due process. Plaintiff's injuries arise out of Defendants' Illinois related activities.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and the Defendants are subject to personal jurisdiction here.

## ALLEGATIONS COMMON TO ALL COUNTS

**Background**

7. Plaintiff Wagner traces its history to 1928 in Chicago, where Irwin Wagner started Wagner Sign Service, an outdoor sign maintenance and cleaning company. Wagner was a relentless innovator, and invented the concept of changeable copyboard letters in the 1930s, including the first slotted marquee letters in 1935. In 1942, Wagner invented the first injection molded plastic letters. Lightweight and practically indestructible, Wagner's three-dimensional

letters and numbers quickly became the product of choice for theater marquees, drive-ins, and other businesses across the country.

8. Wagner continued to innovate and evolved over the years into the company it is today, Wagner Zip-Change. Prior to late 2021, Wagner sold its trademarked Jewelite® Trim molding; its trademarked Zip-Change® flat marquee sign and reader board lettering, tracking, and mounting systems; its patented and trademarked Zip-Lite® reverse copy letter system; its original Wagner three-dimensional injection molded plastic lettering system; and related tools and accessories to distributors around the world.

9. Wagner's Jewelite® Trim is a plastic molding that adds new dimension to cut-out sign letters. Developed by Wagner in the early 1980s, Jewelite® Trim, also known as "trim cap" was the first and original trim cap product in the United States. It soon became the overwhelming market and industry leader for sign trim cap products.

10. Jewelite® was registered with the United States Patent and Trademark Office on March 25, 1975, Registration No. 1,007,380. Wagner acquired an exclusive license to use the Jewelite® mark in 1987 and was the exclusive licensee of the mark for approximately 34 years, from 1987 through October 27, 2021. Wagner invested substantial effort and resources over the years to promote the Jewelite® trademark and the trim cap products sold under that mark.

11. As a result, the Jewelite® name and mark became well known to virtually everyone in the outdoor sign industry and for decades was the industry leading trim cap and synonymous with sign trim cap and Wagner's Jewelite® trim in particular.

**Defendants' Wrongful Conduct**

12. For many years prior to late 2020, Tubelite and Denco (and their predecessor entities) were together the largest, or among the largest, distributors of Wagner's products, including its Jewelite® trim, throughout the United States, Canada, and Mexico.

13. Beginning in late 2020, Tubelite entered into agreements with a third party, Vidon Plastics, Inc. ("Vidon"), to distribute a knock-off trim cap manufactured by Vidon. At the time, Vidon was also the third-party manufacturer that had for many years manufactured Wagner's trademarked Jewelite® trim cap for Wagner, using Wagner's proprietary designs and specifications.

**Tubelite's Trademark Infringement**

14. Beginning in late 2020 and continuing thereafter, Tubelite engaged in an ongoing pattern of trademark infringement, unfair competition, and deceptive trade practices aimed at misrepresenting the knock-off Vidon trim products as Wagner's trademarked Jewelite® products, trading off of the Wagner and Jewelite® names, reputations, and good will, causing confusion in the marketplace, and unfairly competing with Wagner. These included using Wagner's Jewelite® trademark to promote and sell Vidon's knock-off trim cap, false and misleading statements regarding Vidon's trim products and other deceptive practices likely to cause confusion in the marketplace as the affiliation or association of Vidon's knock-off products with Wagner and its Jewelite® trim, and the origin, sponsorship, or approval of the Vidon products.

15. For example, on at least several occasions between early 2021 and October 27, 2021, Tubelite directly infringed Wagner's Jewelite® mark by sending mass emails and individual emails to customers throughout the United States and North America falsely advertising and promoting Vidon's knock-off trim as "JEWELITE TRIM CAP."

16. Tubelite also directly infringed Wagner's Jewelite® mark by repeatedly using the Jewelite® name and mark in other ways to promote and sell Vidon's knock-off trim and to wrongfully associate Vidon's products with the Jewelite® mark. For example, on repeated occasions between late early 2021 and October 27, 2021, Tubelite received orders from customers for Wagner's Jewelite® trim and filled those orders instead with knock-off Vidon trim, while wrongfully referring to Vidon's trim, in email confirmations or otherwise, as "Jewelite."

**Tubelite's Unfair Competition**

17. Tubelite also promoted and sold the Vidon trim products in a manner designed to intentionally create the false impression that they were Wagner's Jewelite® trim products but merely under a new name. The purpose and intent of these statements has been to cause customers to believe that they are purchasing the original Jewelite® Trim products from Wagner, just under a new name, Vidon, when that is not the case.

18. For example, in its promotion and sale of Vidon's knock-off trim, Tubelite repeatedly referred to Vidon's trim as the "Original Trim Cap."

19. As stated above, the "original" trim cap was developed and marketed by Wagner under its Jewelite® trademark since the 1980s. Vidon began manufacturing and selling its knock-off trim cap only recently, in or about January 2021. Tubelite's use of the term "Original Trim Cap" to refer to Vidon's products is false and misleading in that Jewelite® was in fact the "original" trim cap decades ago, and Vidon's brand is new to the market.

20. As a long-time distributor of Wagner's trademarked Jewelite® trim, Tubelite knew that Wagner's Jewelite® was the "original" trim cap, and that calling Vidon's knock-off trim the "Original trim cap" was false and misleading and likely to cause confusion in the marketplace.

5

21. Tubelite furthered this deception and confusion by promoting the Vidon trim cap to customers as simply the "same product" as Jewelite® but merely under a "different name."

22. For example, Tubelite told customers that Vidon's trim cap was just a "different name" for Jewelite®, and that Vidon's trim was the "same product," "exact same product," or "identical" to Jewelite®, but "just not called Jewelite anymore."

23. These statements were also false and misleading and likely to cause confusion in the marketplace. The statements had the purpose and effect of giving the false impression that Vidon trim was just a new name for Jewelite®.

24. Tubelite furthered this deception and confusion in the marketplace by repeatedly taking orders from customers for Wagner's Jewelite® trim and filling those orders with Vidon's knock off trim products, almost always without advising the customers that it was doing so.

25. Beginning in late 2020 or early 2021 and continuing at least throughout all of 2021, Tubelite filled at least several hundred, if not a thousand or more, orders for Jewelite® with Vidon trim.

26. Time and time again, from late 2020 or early 2021 through at least all of 2021, customers in Illinois and elsewhere placed purchase orders for Jewelite®, "Wagner Jewelite," or "Wagner" trim cap, and time and time again Tubelite filled those orders with knock-off Vidon trim, almost always without advising the customers that it was doing so.

27. Especially when combined with Tubelite's use of the Jewelite® trademark to promote and sell Vidon's knock-off trim cap, and its false and misleading statements that Vidon's products were the "same product" as Jewelite® just under a "different" name, Tubelite's repeated acts of filling orders for Jewelite® with Vidon trim were likely to cause even greater confusion in the marketplace as to the affiliation or association of Vidon's knock-off products

6

with Wagner and its Jewelite® trim, and the origin, sponsorship, or approval of the Vidon products.

**Tubelite Acted Willfully and Intentionally**

28. Tubelite's infringement and wrongful use of the Jewelite® mark was willful and intentional. Tubelite, including its senior management and sales personnel, knew at all relevant times that Wagner owned the rights to the Jewelite® mark and that Tubelite had no right to use the mark in connection with the promotion or sale of Vidon's products.

29. As a long-time distributor of Wagner's Jewelite® trim, Tubelite knew that the false and misleading statements outlined above were false, misleading, deceptive, and likely to cause confusion among customers. Tubelite made those statements willfully and intentionally, with the purpose and effect of deceiving customers and causing confusion.

30. Tubelite also acted willfully and intentionally when it repeatedly filled orders for Wagner's Jewelite® trim with knock-off trim manufactured and sold by Vidon.

31. Indeed, Tubelite continued with the above illegal conduct long after it was on notice that its conduct was wrongful and after Wagner demanded that Tubelite cease its improper conduct.

32. On March 24, 2021, Wagner's counsel sent Tubelite written notice that Tubelite's conduct violated Wagner's rights and was likely to cause confusion in the marketplace as to the affiliation or association of Vidon's knock-off products with Wagner and its Jewelite® trim, and the origin, sponsorship, or approval of the Vidon products. Wagner's counsel demanded that Tubelite cease and desists from such conduct.

33. Despite the March 24, 2021 notice and demand, Tubelite willfully and intentionally continued with its illegal conduct unabated. Tubelite continued to infringe the

Jewelite® mark, to make false and misleading statements regarding Jewelite® and Vidon's knock-off trim, and to fill hundreds of orders for Jewelite® with Vidon's knock-off trim products.

34. While continuing with its wrongful conduct, Tubelite simultaneously took steps to conceal that same conduct. In its March 26, 2021 response to Wagner's demand letter, for example, Tubelite falsely denied any knowledge that it filled orders for Jewelite® with Vidon trim, and falsely stated that it would take steps to ensure such practices would not take place. Tubelite then proceeded unabated for many months to fill hundreds more orders for Jewelite® with knock-off Vidon trim.

35. Tubelite intentionally sought to conceal its illegal conduct by, among other things, repeatedly failing and refusing to produce relevant documents and denying that many of the most relevant documents existed, first in response a lawful federal court subpoena issued in the case of *Wagner Zip-Change, Inc. v. Vidon Plastics, Inc., et al.*, Case No. 21-cv-2022 (N.D. Ill.), and then again in response to document requests served in the Illinois state court action between Wagner and Tubelite that preceded the filing of this case.

36. This is an exceptional case entitling Wagner to recover treble damages, costs, and attorneys' fees. Tubelite's conduct has been willful, intentional, illegal, unusually egregious, and in total disregard for Wagner's rights and the rights of others.

**Harm to Wagner**

37. Defendants' wrongful conduct has caused serious damage and irreparable harm to Wagner. Among other things, Defendants' wrongful conduct contributed greatly to driving Wagner out of business, caused Wagner a loss of good will and competitive advantages, lost

customers and customer relationships, lost market share, lost sales, revenue, and profits, and other irreparable harm.

38. Wagner's lost sales caused by Tubelite's conduct for the period of January 2021 through the present totaled at least approximately $4.5 million, with lost profits of at least approximately $1.8 million. Tubelite caused Wagner millions of additional dollars in lost equity value. Tubelite also profited unfairly in the amount of at least $1 million from its sales of Vidon product.

## COUNT I
## (Trademark Infringement, 15 U.S.C. § 1114)

39. Wagner realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

40. Jewelite® was registered with the United States Patent and Trademark Office on March 25, 1975, Registration No. 1,007,380.

41. At all relevant times between 1987 and October 27, 2021, Wagner owned an exclusive license to use the Jewelite® mark.

42. Wagner invested substantial effort and resources over the years to promote the Jewelite® trademark and Wagner's trim cap products sold under that mark.

43. Between approximately late 2020 and at least October 27, 2021, Tubelite used Wagner's Jewelite® mark, including reproductions, copies, and colorable imitations of the mark, in United States and foreign commerce, in connection with the sale, offering for sale, distribution, and advertising of goods consisting of Vidon's trim products.

44. Tubelite's use of the Jewelite® mark in connection with the promotion and sale of Vidon's products was likely to and/or did cause confusion or mistake or to deceive customers and others in the marketplace.

9

45. Tubelite's use of the Jewelite® mark in connection with the promotion and sale of Vidon's products was without Wagner's consent or the consent of the mark's owner.

46. Tubelite's actions occurred in and affected interstate commerce. Tubelite's unlawful use of the Jewelite® mark was in connection with promotional activities and sales to customers throughout the United States, Canada, and parts of Mexico. Wagner marketed and sold its products throughout the United States, Canada, and Mexico.

47. As a direct and proximate result of Tubelite's unauthorized use of the Jewelite® mark, Wagner has incurred substantial damages and irreparable harm, and Tubelite has made sales and profits to which it is not lawfully entitled.

48. This is an exceptional case in that Tubelite's unauthorized use of the Jewelite® mark was knowing, willful, intentional, illegal, unusually egregious, and in total disregard for Wagner's rights and the rights of others.

## COUNT II
### (Lanham Act § 43(a), 15 U.S.C § 1125(a))

49. Wagner realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

50. Tubelite's conduct is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. As alleged above, Tubelite used in commerce and in connection with goods, services, and containers for goods, words, terms, names, symbols, and devices, and combinations thereof, as well as false designations of origin and false and misleading descriptions and representations of fact, including without limitation the following:

   a) False and misleading statements to customers and others that Vidon's trim products were the "Original trim cap;"

b) False and misleading statements to customers and others that Vidon was just a "different name" for Jewelite® but the "same product" or "exact same "product;"

c) False and misleading use of the Wagner name and Jewelite® name or mark in connection with the promotion, offering for sale, and sale of Vidon products; and

d) Surreptitiously filling orders for Jewelite® and Wagner trim with Vidon products.

52. Tubelite's conduct and statements have caused and are likely to have caused confusion or mistake, or to deceive customers and potential customers as to Vidon's affiliation, connection, or association with Wagner or others, or as to the origin, sponsorship, or approval of Vidon's products, services, or other commercial activities.

53. Tubelite made the above statements and engaged in the above deceptive conduct willfully and with actual intent to mislead and deceive members of the public, including actual and potential customers for Wagner's products.

54. Tubelite's actions occurred in and affect interstate commerce. Tubelite's actions involved promotional activities and sales to customers throughout the United States, Canada, and parts of Mexico. Wagner marketed and sold its products throughout the United States, Canada, and Mexico.

55. This is an exceptional case in that Tubelite's conduct has been willful, intentional, illegal, unusually egregious, and in total disregard for Wagner's rights and the rights of others.

## COUNT III
## Common Law Unfair Competition

56. Plaintiff realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

57. Tubelite's conduct as alleged herein constitutes unfair competition in that such conduct involves the use and implementation of wrongful, unlawful, and unfair business

11

practices in violation of Wagner's established rights and which are designed to provide and have provided Tubelite with unlawful and unfair competitive advantages.

58. Among other things, Tubelite misappropriated orders for Wagner's products and misappropriated Wagner's labors and expenditures of time and resources, which Wagner invested to develop its customers and customer relationships and generate sales, by improperly filling orders for Wagner's products with knock-off products from Wagner's direct competitor, Vidon.

59. Tubelite also tortiously interfered with Wagner's prospective economic advantage with customers.

60. Wagner had a reasonable expectancy of a valid business relationship with its customers, many of whom were long-time repeat customers. These included, for example, Illinois customers Volkan Sign & Lighting ("Volkan") and South Water Signs, and customers throughout the United States including Tupp Signs, Inc., AI Innovations, Philadelphia Sign, Sign Leaders, L&H Signs, Widmer Sign Co., Design Team Sign Co., McHenry Industries, Cumming Signs, Advanced Signs & Graphics, Precision Sign & Graphics, Sign Pro USA, Bill Ortwein Signs, Greer Neon Co., and Entera, among many others.

61. Tubelite knew of Wagner's ongoing and prospective customer relationships and expectancies.

62. Tubelite intentionally interfered with Wagner's prospective business relationships and expectancies by, among other things, improperly filling orders for Wagner's products with knock-off products from Wagner's direct competitor, Vidon, including for example orders from Illinois customers Vulkan and South Water Sign and orders from Tupp Signs, Inc., AI Innovations, Philadelphia Sign, Sign Leaders, L&H Signs, Widmer Sign Co., Design Team Sign

Co., McHenry Industries, Cumming Signs, Advanced Signs & Graphics, Precision Sign & Graphics, Sign Pro USA, Bill Ortwein Signs, Greer Neon Co., and Entera, among many others.

63.     Tubelite also intentionally interfered with Wagner's prospective business relationships and expectancies by repeatedly using Wagner's Jewelite® trademark and name to promote and sell Vidon's products and by making false and misleading statements to customers and others, in Illinois and elsewhere, to the effect that Vidon trim cap was the "Original Trim Cap," that Vidon was just a "different name" for Wagner's branded Jewelite® trim cap products, and/or that Vidon's trim products were the same product as Wagner's under a different name.

64.     As a direct and proximate result of Tubelite's wrongful conduct, many of Wagner's prospective business relationships and expectancies with its customers have been terminated, including for example with Vulkan, South Water Sign, Tupp Signs, Inc., AI Innovations, Philadelphia Sign, Sign Leaders, L&H Signs, Widmer Sign Co., Design Team Sign Co., McHenry Industries, Cumming Signs, Advanced Signs & Graphics, Precision Sign & Graphics, Sign Pro USA, Bill Ortwein Signs, Greer Neon Co., and Entera, among many others.

65.     Tubelite has benefitted and will continue to benefit from its unfair and wrongful conduct.

66.     As a direct and proximate result of Tubelite's conduct, Wagner has suffered damages in an amount to be determined at trial, including lost sales and profits, and the loss of customers, sales, market share, competitive advantages, and good will.

67.     Tubelite's misconduct was intentional, outrageous, and in reckless disregard of Wagner's rights, entitling Wagner to punitive damages in amounts to be determined at trial, as necessary to deter Tubelite and others from such outrageous and harmful conduct.

## COUNT IV
### Tortious Interference With Prospective Economic Advantage
(In the Alternative to Count III)

68. Plaintiff realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

69. This Count IV is pled in the alternative to Count III.

70. Tubelite tortiously interfered with Wagner's prospective economic advantage with customers.

71. Wagner had a reasonable expectancy of a valid business relationship with its customers, many of whom were long-time repeat customers. These included, for example, Illinois customers Volkan Sign & Lighting ("Volkan") and South Water Signs, and customers throughout the United States including Tupp Signs, Inc., AI Innovations, Philadelphia Sign, Sign Leaders, L&H Signs, Widmer Sign Co., Design Team Sign Co., McHenry Industries, Cumming Signs, Advanced Signs & Graphics, Precision Sign & Graphics, Sign Pro USA, Bill Ortwein Signs, Greer Neon Co., and Entera, among many others.

72. Tubelite knew of Wagner's ongoing and prospective customer relationships.

73. Tubelite intentionally interfered with Wagner's prospective business relationships by, among other things, improperly filling orders for Wagner's products with knock-off products from Wagner's direct competitor, Vidon, including for example orders from Illinois customers Vulkan and South Water Sign and orders from Tupp Signs, Inc., AI Innovations, Philadelphia Sign, Sign Leaders, L&H Signs, Widmer Sign Co., Design Team Sign Co., McHenry Industries, Cumming Signs, Advanced Signs & Graphics, Precision Sign & Graphics, Sign Pro USA, Bill Ortwein Signs, Greer Neon Co., and Entera, among many others.

74. Tubelite also intentionally interfered with Wagner's prospective business relationships by repeatedly using Wagner's Jewelite® trademark and name to promote and sell

Vidon's products and by making false and misleading statements to customers and others, in Illinois and elsewhere, to the effect that Vidon trim cap was the "Original Trim Cap," that Vidon was just a "different name" for Wagner's branded Jewelite® trim products, and/or that Vidon's trim products were the same product as Wagner's under a different name.

75. As a direct and proximate result of Tubelite's wrongful conduct, all of Wagner's prospective business relationships with its customers have been terminated, including for example with Vulkan, South Water Sign, Tupp Signs, Inc., AI Innovations, Philadelphia Sign, Sign Leaders, L&H Signs, Widmer Sign Co., Design Team Sign Co., McHenry Industries, Cumming Signs, Advanced Signs & Graphics, Precision Sign & Graphics, Sign Pro USA, Bill Ortwein Signs, Greer Neon Co., and Entera, among many others.

76. Tubelite has benefitted and will continue to benefit from its unfair and wrongful conduct.

77. As a direct and proximate result of Tubelite's conduct, Wagner has suffered damages in an amount to be determined at trial, including lost sales and profits, and the loss of customers, sales, market share, competitive advantages, and good will.

78. Tubelite's misconduct was intentional, outrageous, and in reckless disregard of Wagner's rights, entitling Wagner to punitive damages in amounts to be determined at trial, as necessary to deter Tubelite and others from such outrageous and harmful conduct.

WHEREFORE, Wagner requests judgment in its favor and against Tubelite for:

A. all damages caused by Tubelite's wrongful conduct, in amounts to be determined at trial;

B. treble damages pursuant to 15 U.S.C. § 1117(a);

C. all profits earned by Tubelite on sales of Vidon products from the inception of such sales through the date of trial;

D. punitive damages in amounts to be determined at trial;

E.      Wagner's costs and attorneys' fees incurred in this action;

F.      pre- and post-judgment interest; and

G.      such additional relief as this Court deems appropriate.

PLAINTIFF DEMANDS TRIAL BY JURY

                Respectfully Submitted,

                By: /s/ Bradley P. Nelson
                One of the Attorneys for Plaintiff
                Bradley P. Nelson
                FisherBroyles LLP
                150 South Wacker Dr., Suite 2400
                Chicago, IL 60606
                312-300-4005
                brad.nelson@fisherBroyles.com