**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WAGNER ZIP-CHANGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 C 05077 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| TUBELITEDENCO, LLC, TUBELITE | ) | |
| DEN HOLDINGS, LLC, and | ) | |
| TUBELITE DEN, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

For the reasons discussed below, the defendants' motion to dismiss [11] is denied.

Defendants are directed to answer the complaint by March 31, 2026.

**I.      BACKGROUND**

Plaintiff Wagner Zip-Change ("Wagner") is a company headquartered and incorporated in

Illinois. Until late 2021, Wagner was in the business of selling sign lettering products, including

its trademarked Jewelite Trim (also known as "trim cap"), a plastic molding that adds dimension

to cut-out sign letters. Wagner developed the product in the 1980s and claims it "was the first and

original trim cap product in the United States." Compl. ¶ 9, ECF No. 1. Although Wagner never

owned the Jewelite mark, it obtained an exclusive license to use the mark in 1987.[1] For the next

---

[1] Wagner obtained the license from Jewelite Signs and Letters, the mark's first owner and registrant. On October 27, 1999, Jewelite Signs and Letters assigned the registration, along with all of its right, title and interest, to Joseph Robert Bank. Because the parties do not discuss any impact that the assignment may have had on Wagner's rights as licensee, the Court assumes there was none.

34 years, it "invested substantial effort and resources . . . to promote the Jewelite® trademark and the trim cap products sold under that mark." *Id.* ¶ 10.

Wagner did not manufacture the trim cap in-house. Instead, it contracted with a third party manufacturer, Vidon Plastics ("Vidon"), and provided Vidon with all necessary propriety designs and specifications. Wagner also did not sell directly to consumers. It sold its products to distributors, which then sold them to sign companies and other end users. Defendants Tubelitedenco, Tubelite Den Holdings, and Tubelite Den (collectively, "Tubelite") were among the largest distributors of Wagner's products, including its Jewelite Trim.

At some point, Vidon began manufacturing a knock-off version of Jewelite Trim. Wagner alleges that, in late 2020, Tubelite entered into a distribution agreement with Vidon and began engaging in a "pattern of trademark infringement, unfair competition, and deceptive trade practices aimed at misrepresenting the knock-off Vidon trim products as Wagner's trademarked Jewelite products." *Id.* ¶ 13. Specifically, Wagner claims that Tubelite (1) made false and misleading statements that Vidon's knock-off trim cap was "the original trim cap," that Vidon was just a "different name" for Jewelite, and that the product was "the exact same"; (2) used the Jewelite mark in connection with the sale and promotion of the Vidon trim product; and (3) filled at least several hundred customer orders for "Jewelite," "Wagner Jewelite," and "Wagner" trim cap with the Vidon product. This all occurred while Wagner held an exclusive license to use the Jewelite mark. [2]

---

[2] Tubelite filed a separate action against Vidon for its role in the scheme. *See Wagner Zip-Change v. Vidon Plastics*, No. 21 C 2022 (N.D. Ill. Feb. 18, 2022). That case resolved via stipulated dismissal.

According to Wagner, Tubelite's conduct "contributed greatly" to driving it out of business, resulting in at least $4.5 million in lost sales. *Id.* ¶¶ 37-38. Wagner ultimately gave up its rights in the Jewelite mark. On November 19, 2021, the mark's owner of record assigned the mark and all of its interest and goodwill to Vidon. To the best of this Court's knowledge, Vidon remains the mark's owner of record.

Wagner filed suit against Tubelite in August 2023, asserting violations of the Lanham Act and state law claims for unfair competition and tortious interference with prospective economic advantage. Tubelite moved to dismiss.

## II.    DISCUSSION

### A.    Legal Standard and Pleading Requirements

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and contain "sufficient factual matter" to state a facially plausible basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court should not accept a complaint's legal conclusions as true, it must assume the truth of all well-pled allegations and draw all reasonable inferences in the plaintiff's favor. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Notably, Rule 12(b)(6) permits dismissal of legal *claims*, not counts. Legal claims set forth factual grievances and demands for relief, while counts describe legal theories by which those facts may give rise to liability and damages. *See ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016). Here, the plaintiff asserts one claim premised on a core set of facts: Tubelite's unlawful use of the Jewelite mark in 2020 and 2021. It presents four legal theories of recovery for that claim, organized into four counts: trademark infringement and unfair competition pursuant to § 32(1) and § 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1),

1125(a) (Counts I and II), and common law theories of unfair competition (Count III) and tortious interference with prospective economic advantage (Count IV).[3] "[A]lthough the defendants challenge the viability of each legal theory asserted against them, plaintiffs' complaint, asserting that single claim, survives if it is supported by any single recognized legal theory." *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018) (citing *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012)).

In this case, the Court concludes that Wagner has demonstrated a plausible claim for relief under § 43(a)(1)(A) of the Lanham Act. As such, it makes no definitive conclusions on the viability of the legal theories in Counts I, III, and IV.

**B.      Lanham Act § 43(a)**

The Lanham Act establishes a national system of trademark registration and grants trademark owners and users the right to pursue remedies for infringement, false advertising, and other forms of unfair competition. Section 43(a) of the Act, 15 U.S.C. § 1125(a), creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B). Although Wagner purports to bring its claim under both subsections, § 1125(a)(1)(A) is most applicable to the facts at hand. A party may be liable under that subsection for using a false designation of origin in connection with the sale of goods that "is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the origin,

---

[3] Though a common practice, setting forth legal theories in separate counts is inconsistent with the federal pleading rules. As Judge Shadur explained in *Bonestroo, Rosene, Anderlik & Associates v. Devery*, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept of 'claim for relief.'" No. 05 C 02184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citing *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1991)).

sponsorship, or approval of his or her goods." Plaintiffs often bring § 1125(a)(1)(A) claims under a "passing off" theory, asserting that a defendant used the plaintiff's mark to sell inferior goods as though they were the plaintiff's superior product. *See* 5 *McCarthy on Trademarks and Unfair Competition* § 25:1 (5th ed. 2026). To prevail on a § 1125(a)(1)(A) claim, a plaintiff must demonstrate that the mark at issue is protectable, and that the defendant's use of the mark would be likely to cause confusion among consumers. *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

Tubelite does not refute the Jewelite mark's protectability. Nor does it seem to contest that its use of the mark in the sale of Vidon products was confusing to customers. Instead, it argues that Wagner cannot state a claim for false association because: (1) Wagner does not currently use the Jewelite mark or plan to do so in the future; and (2) Vidon is the mark's current owner of record.[4] Neither argument is persuasive.

### 1.    Wagner's Lack of Current Use

Tubelite spends a great deal of time emphasizing something that Wagner readily admits: it does not currently own or use the Jewelite mark. So much so, in fact, one might think that Wagner seeks some form of injunctive relief. If that were true, its present lack of rights in the mark would almost certainly be dispositive. But Wagner seeks damages, not an injunction. To recover damages under § 1125(a), a plaintiff need only prove: (1) "the defendant's Lanham Act violation," (2) "that the violation caused actual confusion among consumers of the plaintiff's product," and (3) "as a

---

[4] Tubelite presents a third reason for dismissal in its opening brief, arguing that Wagner's allegations of fraud fail to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Wagner refutes that argument in its response, and Tubelite drops the argument in its reply. As such, the argument is waived. *See Williams v. REP Corp.*, 302 F.3d 660, 667 (7th Cir. 2002).

result, that the plaintiff suffered actual injury." *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-05 (7th Cir. 1990). That Wagner does not suffer ongoing harm is immaterial. Tubelite nevertheless seizes on Wagner's present non-use of the mark as a basis for dismissal, to no avail.

First, Tubelite points to case law that ties a party's enforcement rights to active, continuous use of a mark. *See* Mot. to Dismiss 7, ECF No. 12 (citing *Zazu Designs v. L'Oreal*, S.A., 979 F.2d 499 (7th Cir. 1992) and *TWD, LLC v. Grunt Style LLC*, 598 F. Supp. 3d 676 (N.D. Ill. 2022)). As a preliminary matter, those cases concern an entirely separate issue—namely, the degree to which a party's common law rights in an unregistered mark, as acquired through consistent, prior use, can preempt later registration of the mark by another party. *See Zazu*, 979 F.2nd at 503; *TWD*, 598 F. Supp. 3d at 686-87. To the extent that *Zazu* and *TWD* are relevant, they do not support Tubelite's argument. They simply stand for the proposition that a plaintiff claiming infringement must show that it had rights in the mark ***when the alleged infringement took place***. In *Zazu*, for example, the Seventh Circuit concluded that a plaintiff did not gain common law enforcement rights in an unregistered mark through a handful of sales in Illinois predating the defendant's use. *Id.* at 504-5. It was the plaintiff's lack of continuous use ***before*** the alleged infringement—not after—that doomed its claim. Here, unlike the plaintiff in *Zazu*, Wagner asserts that it had a license to use the Jewelite mark, that it did so consistently for over 30 years, and that it solidified the mark's association with its trim cap product throughout the national sign industry. The Court is satisfied—

6

at least at this stage—that Wagner had enforceable rights in the mark when Tubelite used it to sell Vidon's products.[5] That is all that is required.

In a separate but related argument, Tubelite contends that Wagner lacks statutory standing under § 1125(a) because it has no current rights in the mark and thus "is not likely to be injured by [Tubelite's] use of the mark." *See* Mot. 8. Tubelite appears to have confused Article III standing for injunctive relief (which, again, Wagner does not seek) with statutory standing under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In *Lexmark*, the Supreme Court held that § 1125(a)'s cause of action is only available to plaintiffs seeking redress for harms that the Lanham Act was intended to prevent. Thus, a plaintiff must (1) "allege an injury to a commercial interest in reputation or sales" that (2) "flow[s] directly from" the defendant's violation of the statute. *Id.* at 132-33.[6] Wagner easily satisfies that test, alleging (1) a commercial injury (loss of millions in sales) that (2) directly resulted from Tubelite's misleading use of the Jewelite mark.

Nothing in *Lexmark* suggests that Wagner is also required to demonstrate current rights in the mark or likelihood of a future injury. Nor would that requirement make much sense. Consider

---

[5] As a general matter, "the caselaw is clear that 'a licensee may assert a Section 43(a) claim against . . . third parties.'" *Baum v. Grainier Franchise Co.*, LLC, No. 24 C 00151, 2024 WL 4026985, at *7 (N.D. Ill. Aug. 30, 2024) (quoting *Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F. Supp. 979, 983 (N.D. Ill. 1997)). Even so, the particular terms of a licensing agreement may preclude recovery by limiting the licensee's enforcement rights. Wagner does not provide a copy of the licensing agreement, so the relevance of any such terms is unknown. Regardless, at the pleading stage, a party need only assert its status as a licensee to proceed under § 1125(a). *Id.* at *8. Particular term language may be addressed at summary judgment.

[6] Although the *Lexmark* Court specifically considered statutory standing for false advertising under § 1125(a)(1)(B), courts have applied the same analysis to false association claims under § 11245(a)(1)(A). *See Ottaviani v. Rubino*, No. 23 C 02865, 2024 WL 3442963, at *4 (N.D. Ill. July 17, 2024) (collecting cases).

7

the consequences: defendants who appropriate another party's mark so successfully as to actually drive that party out of business—as Tubelite is alleged to have done here—would effectively be immune from suit under the Lanham Act. That would be an exceedingly odd result. Indeed, the notion that *Lexmark* compels such an outcome is directly contradicted by the *Lexmark* Court's own explication that "a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses." 572 U.S. at 134. Tubelite's reading of the case has no basis in the law and merits no further consideration.

### 2. Vidon's Current Ownership

Tubelite also argues that Wagner's false association claim fails because Vidon, as the Jewelite mark's current owner of record, has an incontestable right to use the mark under § 15 and § 33(b) of the Lanham Act, 15 U.S.C. §§ 1065, 1115(b). Indeed, Tubelite suggests that "it is nonsensical for [Wagner], a party with no current ties to a mark, to assert an unfair competition claim against [Tubelite] for business conducted with the current rights owner, Vidon." Tubelite's position, however, is the nonsensical one.

The Lanham Act provides that a registrant's right to use a registered mark shall be "incontestable" if the mark has been in continuous use for five years. § 1065. After a mark gains "incontestable" status, the registration serves as conclusive evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's "exclusive right to use" the mark. § 1115(b). Tubelite explains that, because the Jewelite mark has been in continuous use for more than five years, and because Vidon is the mark's current owner, Vidon's rights in the mark are, at present, incontestable. That's all well and good. But it has little bearing, if any, on Wagner's false association claim.

8

First, Vidon acquired the mark in November 2021—after the alleged misuse of the mark took place. Second, Tubelite—not Vidon—is the defendant in this action, and it has presented no legal authority to suggest that it can assert Vidon's rights in its own defense. Finally, those threshold issues aside, the Lanham Act includes many exceptions to § 1115(b)'s presumption of incontestability.[7] As the Seventh Circuit has explained, "the word 'incontestable' is misleading, because an incontestable mark may be contested, and defeated, on many grounds." *Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 724 (7th Cir. 2010) (cleaned up). In reality, "the principal effect" of incontestable status is "to relieve the trademark owner of any need to show secondary meaning" in the face of a challenge to the mark's validity. *Id.* No such challenge has been made here.

In summary, it is not clear how Vidon's current, incontestable rights in the mark are of any help to Tubelite in this dispute. In any event, they are certainly not grounds for dismissal of Wagner's claim.

\*　　\*　　\*

For the aforementioned reasons, Tubelite's motion to dismiss is denied.

Date: March 10, 2026

John J. Tharp, Jr.
United States District Judge

---

[7] *See McCarthy* § 32:147 ("[W]hile § 33(b) lists nine exceptions to incontestability, it seems clear that § 33(b) incorporates the exceptions of § 15 by reference, and § 15 in turn incorporates § 14(3) and (5) by reference, and § 14(3) in turn incorporates the exceptions of § 2(a), (b), and (c) and § 4. As many as 21 possible exceptions to incontestability have been listed . . . .").